IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KENNETH J. DILLON

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE

    Defendant.

Case No. 1:17-cv-01716-RC

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)   I am currently the Section Chief of the Federal Bureau of Investigation's ("FBI") Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"),[1] in Winchester, Virginia. My previous declaration in this matter dated June 15, 2018, explained my employment history and responsibilities at the FBI. *See* ECF No. 14-2, ¶¶ 1-2 (hereafter referred to as "First Hardy Declaration").

(2)   The FBI submits its second declaration in response to Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment. *See* ECF No. 15-1 (hereafter referred to as "Plaintiff's Opposition"). This declaration supplements, and hereby incorporates by reference, the information previously provided in the First Hardy Declaration, and is submitted in further support of the Defendant's Motion for Summary Judgment and to address the issues raised by the Plaintiff's Opposition dated July 16, 2018.

---

[1] In May 2018, the FBI changed the name of its Records Management Division ("RMD") to IMD.

(3)     In Plaintiff's Opposition, Plaintiff challenges four aspects of the FBI's handling of his Freedom of Information Act ("FOIA") request: 1) the adequacy of the FBI's search for responsive records; 2) the adequacy of the index provided as Exhibit FF to the First Hardy Declaration; 3) the applicability of the deliberative process privilege to the Interim Major Case Summary ("IMCS");[2] and 4) the FBI's withholding of segregable information. I will address each claim individually, below.

## THE FBI'S THOROUGH SEARCH FOR RECORDS

(4)     In Plaintiff's Opposition, Plaintiff challenges the FBI's search because the FBI did not locate additional responsive emails. However, the additional emails Plaintiff uses as the foundation to challenge the search are not FBI records.

(5)     Under the FOIA, a federal agency, "upon any request for records which [] reasonably describes such records..., shall make the records promptly available..." 5 U.S.C. § 552(a)(3)(A). If an item requested is not an agency record, it is not subject to the FOIA. Factors relevant to a determination of record status under the FOIA include, among others, (1) the purpose for which the document was created; (2) the degree of integration of the record into the agency's filing system; and (3) the extent to which the record's author or other employees used the record to conduct agency business. See, e.g., *Consumer Fed'n of Am. v. USDA*, 455 F.3d 283, 288-293 (D.C. Cir. 2006). The factors are interrelated, and the overall emphasis of this analysis is whether the documents are used to conduct the official business of the agency.[3]

---

[2] Contrary to Plaintiff's claim on page 6 of Plaintiff's Opposition, RIDS conducted an extensive review of the IMCS. After reviewing the IMCS' twenty-two (22) page Table of Contents, the FBI determined multiple exemptions applied, in addition to Exemption (b)(5), and preserved the right to assert Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E) as underlying exemptions. *See* First Hardy Declaration, FN 16 & ¶¶ 82-100.

[3] While not identical, both the definition of "record" for FOIA purposes and the conclusion that the focus is on documents used to conduct official agency business are consistent with the

2

(6) Bruce Ivins' USAMRIID emails are not FBI records under the FOIA. Before his death, Bruce Ivins worked at the United States Army Medical Research Institute of Infectious Diseases ("USAMRIID"). While a federal agency, USAMRIID is not connected with the FBI. USAMRIID operates to defend civic health and well-being, whereas the FBI's primary function is law enforcement. Thus, Bruce Ivins composed these emails at an outside organization for a non-law enforcement purpose.

(7) The FBI possesses select Bruce Ivins emails because these emails are part of the FBI's criminal investigation into him. The emails located by the FBI were gathered and placed within its' investigative case file, per the FBI's primary law enforcement mission to investigative violations of federal law. It is FBI policy to import all records into the investigative case file. The investigative file is retrievable by RIDS through a search of the Central Records System ("CRS"). As a result of its initial search, the FBI searched the CRS and located Bruce Ivins' criminal investigative file. RIDS reviewed the file and found a limited number of emails involving the people specified by Plaintiff in his request. The four emails released to Plaintiff comprise all the FBI's records responsive to his narrow request. Thus, the emails identified by the FBI and released to Plaintiff are indicative of the FBI's extensive search and critical review for the specific emails requested by Plaintiff.

(8) Second, Plaintiff states "[t]he FBI failed to establish that its search methods for specific emails was reasonably calculated to uncover relevant documents." However, I provided a detailed explanation of the FBI's comprehensive search. *See* First Hardy Declaration, ¶¶ 37-47. Specifically, RIDS conducted a CRS search and located Bruce Ivins' investigative file, in

---

definition of "record" under the Federal Records Act, which governs records management across the Executive Branch. See 44 U.S.C. § 3301.

3

electronic format. RIDS performed a page-by-page review of the entire file to identify all the documents involving Bruce Ivins, as requested by Plaintiff. This review included a page by page electronic review to locate responsive emails. Moreover, RIDS searched the Federal Document Processing System ("FDPS"), via the retrieval function,[4] for any previous FOIA or Privacy Act (FOIA/PA) requests received by the FBI for the same subject. Through this search, RIDS identified seven (7) pages of responsive records. RIDS reviewed these records and confirmed they are duplicate of the records available in the Bruce Ivins investigative file. Furthermore, RIDS consulted with subject matter experts in the field to review the main investigative file on the Anthrax attacks. The FBI performed a comprehensive search of the main investigative file and did not find additional responsive records.

(9)   In sum, the FBI searched its records systems, reviewed the investigative file, and consulted with subject matter experts in the field. These exhaustive efforts establish the FBI performed a reasonable search to locate records responsive to Plaintiff's request.

## THE FBI PROVIDED AN APPROPRIATELY DETAILED INDEX

(10)   The FBI provided an Exemption application index which is a consolidated document to be used as a reference for a person reviewing the First Hardy Declaration. This index lists the processed pages and the Exemptions applied on each page. This index, in conjunction with the FBI"s *Vaughn* declaration, provide an adequate explanation of why the FBI asserted specific Exemptions and where within the body of responsive records Exemptions were applied. A more detailed *Vaughn* Index would not provide any additional meaningful information. The IMCS' twenty-two page table of contents was the only document withheld in

---

[4] A retrieval search allows RIDS employees to search FDPS by entering search criteria in search fields to retrieve a hit-list of requests. From the hit-list, one can view all available information about a request, including the subject of a request. A retrieval search of FDPS will locate any records on the same topic that have already been processed and released.

full from Plaintiff. *See* First Hardy Declaration, ¶¶ 79-82 & FN16. The FBI explicitly stated the reasons for withholding this material in the First Hardy Declaration. *Id.* The FBI applied very few exemptions to the other records. Thus, the FBI provided an appropriate index.

## THE IMCS IS PRELIMINARY AND DELIBERATIVE

(11) The FBI appropriately withheld the IMCS's twenty-two (22) page table of contents ("ToC") and select portions requested by Plaintiff because the entire IMCS is deliberative. The title of this document is the *Interim* Major Case Summary, indicative of the fact the entire report is intended to be non-conclusive. *See* First Hardy Declaration, ¶¶ 79. Furthermore, the investigators who wrote the IMCS' included an explicit statement describing the IMCS as pre-decisional and deliberative in nature. *Id.*

(12) Additionally, the FBI created this report for the purpose of soliciting input and aiding the investigators in making appropriate decisions to progress the FBI's investigation. *See* First Hardy Declaration, ¶¶ 80-81. The FBI created this *Interim* report for leadership in the FBI, the United States Postal Service, and Department of Justice to detail the evidence and deliberations of investigators at the time. Statements and opinions stemming from inter-agency communications are intertwined throughout the IMCS. Disclosing any part of the IMCS could deter future collaborations between the agencies and their employees as it would set a precedent where employees would come to fear their unrefined opinions and ideas could become subject to public disclosure through the FOIA. Thus, the FBI appropriately precluded the IMCS from disclosure because of this foreseeable harm to agency deliberations.

(13) Finally, releasing any part of the IMCS's preliminary findings would cause public confusion as to the FBI's final agency decisions. *See* First Hardy Declaration, ¶¶ 79. The ToC is a roadmap of the entire IMCS and reveals the beliefs and opinions of the investigators at the time

of its creation. Additionally, the portions dealing with the select topics requested by Plaintiff, consist of preliminary findings, recommendations and opinions on these specific topics.[5] These opinions and conclusions discussed within these portions of the IMCS changed in the four (4) years between the creation of the IMCS and the FBI's final report. Releasing information from the IMCS would unnecessarily cast doubt on the final conclusions of this investigation. The IMCS would not aid the public knowledge of this investigation, but rather cast unwarranted suspicion on this investigation by releasing unrefined opinions and interim findings, not indicative of the FBI's conclusions drawn years later, after further investigations and deliberation.

(14)   In sum, the FBI properly withheld all twenty-two pages of the ToC and the portions dealing with the topics specified by Plaintiff due to the deliberative nature of this report. Releasing any part of the IMCS would create public confusion and harm agency deliberations in current and future investigations.

## THE FBI RELEASED ALL SEGREGABLE INFORMATION

(15)   The FBI provided Plaintiff all non-exempt records responsive to his FOIA request. RIDS examined every page to identify non-exempt information which could be released to Plaintiff. The FBI performed an in-depth review of every page of records. As a result, the FBI processed and released 105 pages of Bruce Ivins' notebook and email communications. The FBI withheld personal information to protect the personal privacy of third parties, in accordance with the law. The FBI released all other information from the emails and notebooks. Moreover, the FBI asserted a (b)(5) categorical denial in conjunction with the deliberative process privilege

---

[5] This includes the section dealing with the FBI's preliminary findings on Bruce Ivans. *See* Plaintiff's Opposition at page 6.

for the ToC of the IMCS. The IMCS consists solely of preliminary agency findings and is inherently deliberative in nature. As an interim, deliberative product, the facts, opinions, and analyses within the IMCS are inexorably intertwined with inter-agency deliberations; thus, the FBI is unable to segregate potions of the IMCS ToC without releasing information that would harm the deliberative process.

(16) If the Court deems it necessary, the FBI will provide copies of the processed records to the Court for *in camera* inspection.

## CONCLUSION

(17) The FBI performed a reasonable search for records responsive to Plaintiff's specific request and subject to the FOIA. The FBI released all segregable information to Plaintiff permitted under the law. The FBI provided ample justification and explanation for the Exemptions it applied through the First Hardy Declaration and Exemption application index. The ToC is a portion of a deliberative document and releasing this would result in public confusion and harm to the deliberative process. Finally, the FBI is willing to provide copies of the processed records to the Court for *in camera* inspection, upon request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of September, 2018.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia